I wou UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRI GRESS,

                Petitioner,                Civil Action No. 2:12-cv-14211
                                                        Honorable Lawrence P. Zatkoff

v.

MILLICENT WARREN,

                Respondent.
_____/

OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner's pro se request for habeas relief pursuant to 28 U.S.C. § 2254. Petitioner pled guilty in the Wayne Circuit Court to cocaine possession, MICH. COMP. LAWS § 333.7403(2)(a)(v), armed robbery, MICH. COMP. LAWS § 750.529, kidnapping, MICH. COMP. LAWS § 750.349, extortion, MICH. COMP. LAWS § 750.213, assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, and felonious assault, MICH. COMP. LAWS § 750.82. Pursuant to the plea bargain, Petitioner was sentenced to 10-to-20 years for the armed robbery, kidnapping, extortion, assault with intent to cause great bodily harm, and assault with intent to rob while armed convictions, 1-to-15 years for the felonious assault conviction, and 1-to-6 years for the possession of cocaine conviction. The petition raises one claim:

> Petitioner's convictions for felonious assault, assault with intent to rob while armed, and armed robbery are duplicitous and thus violate Petitioner's right against being subjected to double jeopardy.

The Court will deny the petition because Petitioner's claim does not merit habeas relief. The

Court will also deny Petitioner a certificate of appealability and deny permission to proceed *in forma pauperis* on appeal.

## Background

The testimony at the preliminary examination revealed that the victim in this case, Brian Marko, came to Petitioner's house for the purpose of prostitution. While there, he was taken down into the basement by a group of men and tied up. Marko was assaulted in various manners in an ongoing attempt to steal from him. This included one man shooting him twice in the knee, and another man hitting him in the face and knocking out his teeth. Marko's wallet was taken and a relative was called for a ransom demand. Marko was later taken to a bank to withdraw money but it was closed, and he did not have his ATM card. Eventually, Marko managed to escape by overpowering one of the his assailants in a car while the other assailants were in a party store. Petitioner admitted to police that "we" made Marko go into the basement, tied him up and called his family for ransom money. The state district judge found after the examination that the extent of Petitioner's presence and participation supported the charges against her as an aider and abettor.

The case was bound over to the Wayne Circuit Court for trial. Subsequently, Petitioner entered into a plea agreement to plead guilty to the above-described charges with a sentencing agreement that called for 10-to-20 year concurrent sentences on the most serious charges.

Following her conviction and sentence, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which raised the following claims:

> I. Petitioner's convictions for felonious assault, assault with intent to rob while armed, and armed robbery are duplicitous and thus violate Petitioner's right against being subjected to double jeopardy. Only a single one of those charges should stand.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.

*People v. Gress*, No. 300528, 2012 WL 104750, at *1, (Mich. Ct. App. Jan. 12, 2012). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claim as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Gress*, 492 Mich. 854 (2012) (table).

## Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court

3

decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to 28 U.S.C. § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens,

4

J., concurring in judgment). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

## Discussion

Petitioner asserts that her convictions for felonious assault, assault with intent to commit armed robbery, and armed robbery all arose out of the same transaction and therefore her convictions for these three offenses violates Petitioner's right against being subjected to double jeopardy. Respondent asserts that the state courts reasonably rejected this claim, and that in any event the Court need not address Petitioner's claims under the concurrent sentencing doctrine because even if two of the convictions are thrown out, it will not change the duration of her sentence.

The test for the multiple-punishment aspect of the Double Jeopardy Clause focuses on legislative intent.  Under *Blockburger v. United States*, 284 U.S. 299, 304 (1932), where the same act or transaction constitutes a violation of two or more distinct statutory provisions, the test applied by the Supreme Court to determine whether Congress intended to create multiple offenses or only one is whether each provision requires proof of an additional fact that the other does not.  If each offense has an additional element, the Supreme Court presumes that Congress intended them to be viewed as separate offenses and warrant multiple punishment.

The *Blockbuger* test is, at root, simply one rule of statutory construction.  *See Albernaz v. United States*, 450 U.S. 333, 340 (1981); *Missouri v. Hunter*, 459 U.S. 359, 367 (1983); *Whalen v. United States*, 445 U.S. 684, 691 (1980); *Beam v. Foltz*, 832 F.2d 1401, 1411 (6th Cir. 1987). The

5

Supreme Court explained that effectuating legislative intent is all that lies behind the multiple-punishment protection of the Double Jeopardy Clause. Thus, if a legislature intends to authorize cumulative punishment under two statutes–even if those two statutes constitute the same "offense" under *Blockburger* test–multiple punishments after a single trial are permissible. *Hunter*, 459 U.S. at 368-369. As explained by the Sixth Circuit, "[e]ven if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Banner v. Davis*, 886 F.2d 777, 781 (6th Cir. 1989).

In *Albernaz*, the Supreme Court stated that the "dispositive question" in the multiple punishment context is whether Congress intended to authorize separate punishments for the two crimes. 450 U.S. at 344. "This is so because the 'power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress.'" *Id*. (internal citation omitted). The Court held that "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Id.*

In this case, the Michigan Court of Appeals rejected Petitioner's claim by finding that the Michigan Legislature intended for multiple punishments to be imposed in Petitioner's situation:

> The United States and Michigan Constitutions both preclude double jeopardy. US Const, Am V; Const 1963, art 1, § 15. The constitutional prohibition against double jeopardy provides three separate protections: "(1) it protects against a second prosecution for the same offense after acquittal, (2) it protects against a second prosecution for the same offense after conviction, and (3) it protects against multiple punishments for the same offense." *People v. Nutt*, 469 Mich. 565, 574 (2004). "The first two protections are generally understood as the "successive prosecutions" strand of double jeopardy, while the third protection is commonly understood as the "multiple punishments" strand." *People v. Bobby Smith*, 478 Mich. 292, 299 (2007).
>
> The protection against multiple punishments for the same offense "is to protect the defendant from having more punishment imposed than the Legislature

6

intended." *People v. Ford*, 262 Mich.App. 443, 447-448 (2004). It is "a restriction on a court's ability to impose punishment in excess of that intended by the Legislature." *People v. Fox (After Remand)*, 232 Mich. App. 541, 556 (1998). In *Garland*, 286 Mich. App. at 4-5, this Court explained:

> To determine whether a defendant has been subjected to multiple punishments for the "same offense," we must first look to determine whether the Legislature expressed a clear intention that multiple punishments be imposed. Where the Legislature clearly intends to impose such multiple punishments, there is no double jeopardy violation. Where the Legislature has not clearly expressed an intention to impose multiple punishments, the elements of the offenses must be compared using the *Blockburger* test. Under the *Blockburger* test, if each offense "requires proof of a fact which the other does not" then there is no violation of double jeopardy. [Citations omitted.]

The statutes at issue, MCL 750.529 (armed robbery), MCL 750.89 (assault with intent to rob while armed), and MCL 750.82 (felonious assault) do not contain any language indicating that multiple punishments either were or were not intended. See, e.g., MCL 750.227b(2) (stating that the punishment for a felony-firearm conviction "is in addition to the sentence imposed for the conviction of the" underlying felony), and MCL 750.349(4) (a conviction for kidnapping does not prohibit the defendant from being charged with, convicted of, or sentenced for any other crime arising from the incident). Therefore, it is proper to consider the elements of the various offenses.

Armed robbery is a robbery committed while the defendant is or claims to be armed with a dangerous weapon. MCL 750.529. An unarmed robbery occurs when the defendant uses force or violence against a person while in the course of committing a larceny of money or other property. MCL 750.530(1). The elements of armed robbery are (1) the defendant was engaged in the course of committing a larceny of any money or other property, (2) the defendant used force or violence against a person who was present or assaulted or put the person in fear, and (3) the defendant, in the course of committing the larceny, possessed a real or feigned dangerous weapon or represented that he or she possessed a dangerous weapon. *People v. Chambers*, 277 Mich App 1, 7 (2007).

Assault with intent to rob while armed is an assault committed with the intent to rob and steal while armed with a dangerous weapon. MCL 750.89. The elements of the offense are (1) the defendant committed an assault with force and violence, (2) the defendant had the intent to rob or steal, and (3) the defendant was armed with a real or feigned dangerous weapon. MCL 750.89; *People v. Akins*, 259 Mich. App. 545, 554 (2003).

7

> Felonious assault is an ordinary assault committed while the defendant is armed with a dangerous weapon. MCL 750.82(1); *People v. Jones*, 443 Mich. 88, 100 (1993). The elements of the offense are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Avant*, 235 Mich. App. 499, 505 (1999). Unlike armed robbery and assault with intent to rob while armed, the defendant must be armed with an actual dangerous weapon, i.e., a gun, knife, iron bar, club, brass knuckles, or some other instrument used in a manner intended to inflict injury. MCL 750.82(1); *People v. Brown*, 406 Mich. 215, 221 (1979). The use of a feigned weapon or a claim that the defendant is armed is not sufficient.
>
> In *Chambers*, this Court held that convictions of armed robbery and felonious assault are not precluded by double jeopardy in an incident involving a single victim "because they are not the 'same offense' given that . . . each offense has an element that is not required for the other." *Chambers*, 277 Mich App at 9 (footnote omitted). Specifically, "armed robbery requires proof of an element not required to establish a felonious assault, i.e., actions in the course of committing a larceny," while "felonious assault require[s] proof of an element not required to establish an armed robbery, i.e., the use of a dangerous weapon." *Id.* at 8-9 (emphasis in original). For the same reasons, armed robbery and assault with intent to rob while armed are not the same offense. Armed robbery requires that the defendant be engaged in the course of committing (or attempting to commit) a larceny, whereas assault with intent to rob while armed requires only that the defendant have the intent to commit a larceny, not that she act on that intent. Further, assault with intent to rob while armed requires that the defendant actually be armed with a real or feigned dangerous weapon, whereas armed robbery does not; the simple representation that the defendant has a weapon is sufficient. Therefore, defendant has not shown a violation of her double jeopardy rights.

*Gress*, 2012 WL 104750, at *2-4, (Mich. Ct. App. Jan. 12, 2012) (footnotes omitted).

This decision was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law. The state appellate court correctly noted that the test for double jeopardy in these circumstances amounts to ascertaining legislative intent. It then decided, as a matter of state law, that Michigan's legislature intended that a defendant could be convicted of the offenses in question for a single criminal transaction. Petitioner's argument to the contrary amounts to a non-cognizable disagreement with the state court about an issue of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine

8

state-court determinations on state-law questions").

Petitioner notes that since the time her direct appeal was decided, the Michigan Court of Appeals issued a published opinion that supports her claim. In *People v. Gibbs*, 299 Mich. App. 473, 491 (2013), the Michigan Court of Appeals held that because assault with intent to rob while armed is a lesser included offense of armed robbery, and neither crime contains an element the other does not, a defendant cannot be convicted of both under the same-elements test. It is clear that the panel that decided Petitioner's appeal disagreed that assault with intent to commit armed robbery was a lesser included offense of armed robbery because "assault with intent to rob while armed requires that the defendant actually be armed with a real or feigned dangerous weapon, whereas armed robbery does not; the simple representation that the defendant has a weapon is sufficient." *Gress*, 2012 WL 104750, at *4. The *Gibbs* court did not consider this purported difference in elements. Be that as it may, this Court is bound by the construction of state law given by the state court in Petitioner's case. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). For this Court to accept the holding in *Gibbs* and reject the holding of the Michigan Court of Appeals in Petitioner's own direct appeal would amount to second-guessing conclusions of state law made by the state court in Petitioner's case, a result prohibited by *Bradshaw*.

Finally, even if there were validity to Petitioner's argument regarding *Gibbs*, the Court would not be in a position to grant any meaningful relief. Under the "concurrent sentencing doctrine," a Court has discretion to decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence

9

on a valid conviction. See *United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). The doctrine has its origins in appellate practice applicable to direct review of criminal cases. *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943). In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody. *See, e.g.*, *Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976). The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand. *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3.

In habeas actions, as in direct review, the exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is allowed to stand. Here, even if the Court were to vacate two of the challenged convictions, Petitioner's convictions and identical sentences for armed robbery, extortion, assault with intent to commit great bodily harm, and kidnapping would remain intact. Petitioner has made no showing that she will suffer any collateral consequences by serving five concurrent 10-to-20 year sentences instead of three. Furthermore, contrary to Petitioner's arguments, there is no indication in the record that Petitioner's plea bargain was affected by any perceived error. Therefore, in the alternative, the Court finds that Petitioner's claim is barred by the concurrent sentence doctrine.

Accordingly, the petition is denied.

Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

Conclusion

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that permission to proceed *in forma pauperis* on appeal is DENIED.

IT IS SO ORDERED.

                                            S/Lawrence P. Zatkoff
                                            Hon. Lawrence P. Zatkoff
                                            United States District Judge

Dated: April 29, 2014